**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RAVEN H.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 20 C 6695** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Supplemental Security Income ("SSI") under Titles XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381a, 1382c, over four years ago, on April 9, 2018. (Administrative Record (R.) 258-63). She claimed that she became disabled since April of 2010, due to a host of issues, including back and hip injuries, brain injury with cognitive difficulties and memory loss, migraines, and anxiety and depression. (R. 289). Over the ensuing two and a half years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981.

**I.**

**A.**

The plaintiff was born on October 20, 1992 (R. 284), making her just twenty-seven years old

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

at the time of the ALJ's decision, and just twenty-five years old when she claims she became unable to work. (R. 14-37). She has a high school education (R. 96), and a brief work history, working as a waitress for several months back in 2008, but was in a car accident over a decade ago in 2010 (R. 46-47). After her accident, she worked as a receptionist in her mother's pet grooming business in 2012. (R. 284, 289, 291, 302-04). But, that job ended because of an argument with her mother. (R. 97). She has had two children since her accident. (R. 60). Plaintiff claims it is difficult for her to focus (R. 47), and that she gets overwhelmed interacting with people. (R. 48). She takes Adderall which helps with her focus. (R. 48). She claims to have a lot of chronic pain, headaches, and dizziness. (R. 56).

Head CT scans from the time of plaintiff's motor vehicle accident in April 2010 revealed right medial temporal intraparenchymal hemorrhage, left convexity subdural hematoma, left frontal and parietal subarachnoid hemorrhages, and right intraventricular hemorrhage. The doctor further noted that plaintiff sustained additional injuries as well: fractures of both clavicles, two fractures of the right arm, T1 transverse process fracture, lumbar vertebrae fracture, six left rib fractures, fractured sternum, fractured pelvis in five places, collapsed lung, ruptured spleen, lacerated liver, torn ligament in the left knee, and lacerated lower lip. (R. 634). Several months after her accident, plaintiff was hospitalized for a suicide gesture and was diagnosed with oppositional defiant disorder, ADHD, and anxiety disorder. (R. 634).

On February 28, 2018, a lumbar spine x-ray was normal aside from mild straightening of the cervical lordosis. (R. 555). On March 21, 2018, an MRI of the plaintiff's brain revealed no fluid collection, no evidence of hemorrhage, unremarkable flow voids, no signal abnormalities, and non-specific cortical white matter which might represent diffuse axonal injury. (R. 418-19). On April 13, 2018, a cognitive linguistic quick test was within normal limits, but there was a mild severity rating

2

in memory and language. A standardized memory test placed plaintiff in the 19th percentile. Diagnosis was mild cognitive-communication deficits in the area of memory. (R. 582). It was noted that her memory issues had improved since her accident eight years earlier, and that she had fair rehabilitation potential to reach her established goals. (R. 581).

On April 12, 2018, plaintiff saw Dr. Yucus, complaining of dizziness and daily headaches. (R. 633). She also suffered persistent neck and back pain. (R. 634). Plaintiff reported that Adderral had helped with her attention. (R. 633). Mental status exam was normal aside from reduced attention and recall. (R. 634). Cranial nerves and motor exam were normal, and reflexes were 2+. Gait was normal. (R. 635). Speech therapy was discontinued, as plaintiff was able to independently utilize memory and word finding strategies (R. 571).

On May 14, 2018, plaintiff was complaining of bilateral clavicle pain and low back pain. She had received trigger point injections in the clavicles in December of 2016, September of 2017, and December of 2017. (R. 655). Plaintiff had full range of motion, sensations were intact, and her upper and lower extremity strength was normal. (R. 655).

On June 16, 2018, plaintiff was again complaining of bilateral clavicle pain and low back pain. There was tenderness over her clavicles, but musculoskeletal and neurological exams were normal. (R. 645).

On June 26, 2018, plaintiff had a consultative mental status exam with Michael Stone, Psy.D. She was cooperative with adequate eye contact and was verbal and interactive. Her behavior was appropriate, but she reported doing things without thinking carefully through them. (R. 547). The plaintiff was oriented with an unremarkable mood and normal affect. There was no evidence of delusions, hallucinations, suicidal ideations, or homicidal ideations. Speech was normal in rate and volume, and it was relevant and coherent . She was able to recall biographical information and the

3

route she took to the examination. Plaintiff was able to repeat four digits forward and in reverse. The plaintiff recalled three out of three items immediately, but zero out of three after a five-minute delay. She was able to name three large cities in the United States, and she was able to name the current and most recent presidents. She was also able to name similarities between groups of items. (R. 548). On the Wechsler Adult Intelligence Scale, IV, the plaintiff received composite scores of: verbal comprehension-78, perceptual reasoning-73, working memory-77, processing speed-81, and full scale IQ-72 (R. 549). Dr. Stone opined that the plaintiff's abilities to relate to others and understand, remember and follow simple instructions were fair, but her abilities to maintain attention and concentration required to perform simple tasks and to adapt and withstand day-to-day work stress and pressures were poor. (R. 550).

On July 2, 2018, plaintiff reported she was exercising, and she had improved. She was independent in regard to her activities of daily living. (R. 609). It was noted the plaintiff had no weight bearing restrictions, but she had some decrease in upper extremity strength and function. (R. 610). On August 24, 2018, the plaintiff rated her pain as a four on a ten-point scale, and it requested an injection and a paper prescription as she was going to Alaska in a week or so. (R. 649). Exam was normal aside from clavicle tenderness and left knee crepitus. (R. 649).

On October 26, 2018, the plaintiff complained of clavicle, spine, and knee pain, and she rated her pain as a three on a ten-point scale (R. 659). It was noted that a CT head scan on August 13, 2018 was unchanged from the previous study. There was tenderness along the clavicles and left knee crepitus, but strength and sensation were normal. (R. 659).

On December 6, 2018, the plaintiff rated her lower pain as a four on a ten-point scale. There was some numbness and tingling in her toes. (R. 669). There was tenderness along the clavicle and in the left knee. Strength and sensation were normal. (R. 669).

4

On January 4, 2019, the plaintiff saw Dr. Yucus with complaints of dizziness and chronic headaches. (R. 1234). She reported that her pain specialist would no longer prescribe her Norco – Dr. Yucus explained that was because she was breastfeeding (R. 1237) – Adderral was helping with her focus. (R. 1234). Gait was steady, strength was 5/5 throughout, sensation was decreased in the big toes. (R. 1236). Dr. Yucus noted that an MRI of the lumber spine in December 2015 was normal, and an EMG of plaintiff's legs in November 2018 showed evidence of mild, chronic low lumbar radiculopathy. (R. 1237).

On April 1, 2019, the plaintiff reported not having any help caring for her young children, and she reported challenges organizing their care. She said she used a dry erase board to write reminders regarding their care. (R, 1164). Dr. Yucus put her back on Norco. (R. (Ex. 1162, 1163). She had headaches, which rated 4/10, daily. (R. 1163). Physical exam was essentially normal. (R. 1163-64).

In May of 2019, the plaintiff was referred for outpatient physical therapy. (R. 920-22). On May 9, 2019, a clavicle x-ray showed no plain radiographic abnormality (R. 1136). Exam revealed significant left knee crepitus, normal strength and sensation. Exam of plaintiff shoulder function revealed clavicle tenderness and positive cross arm adduction bilaterally; balance of the exam was normal. (R. 1140). In September of 2019, plaintiff complained of bilateral foot numbness, and she had decreased strength upon examination. On September 3, 2019, plaintiff complained of inattentiveness and seeing tasks through, and headaches occurring daily with a severity of 4/10. Plaintiff said she was exercising five times per week for one hour per day. (R. 1120). She scored 34 Cognitive Assessment. (R. 1122).

October of 2019, the claimant was discharged from physical therapy, and it was noted she did not experience radicular symptoms with the exception of bilateral foot numbness (Ex. B18F/4).

On November 20, 2019, the plaintiff complained of transient lightheadedness, and testing revealed mild postural tachycardia, which was noted to sometimes be caused by deconditioning. Plaintiff was alert with normal attention and concentration. Language was normal, and fund of knowledge and memory were intact. (R. 1086). Motor exam was normal; gait and coordination were normal. (R. 1088). The plaintiff reported routinely working out and caring for her two young children. (R. 1089). The plaintiff also reported that the stress of caring for her children might be contributing to her headaches and dizziness. (R. 1125). It was noted that addressing the migraines was a challenge due to plaintiff's low blood pressure, which precluded certain therapies. (R. 1125). It was noted the claimant was able to perform light to moderate activities without knee pain, such as walking, housework, and yardwork. (Ex. 1203).

On December 17, 2019, Dr. Yucus wrote a note for plaintiff in which he reported a "diagnosis of traumatic brain injury with sequelae including cognitive dysfunction, and [that] her cognitive dysfunction involves decreased attention." The doctor felt that plaintiff was "unable to sustain employment due to decreased attention, which limits her memory and ability to sustain tasks." (R. 1257).

## B.

After an administrative hearing – at which plaintiff, represented by counsel, and a vocational expert testified – the ALJ determined plaintiff was not disabled. The ALJ found that plaintiff had the following severe impairments: "traumatic brain injury and residual effects of injuries incurred in a remote motor vehicle accident." (R. 19). The ALJ went on to find that plaintiff's impairments, either singly or in combination, did not meet or equal a listed impairment assumed to be disabling in the Commissioner's listings, focusing on Listings 1.02 (major dysfunction of a joint), and 11.18 (traumatic brain injury). (R. 20-21).

6

The ALJ then determined that the plaintiff had the residual functional capacity to perform light work with the following additional restrictions:

> The [plaintiff] is able to ambulate effectively, but ought not to be required to perform more than minimal ambulation on rough or uneven surfaces. The [plaintiff] can occasionally climb ramps and stairs, and she can occasionally stoop, kneel, crouch, and crawl. The [plaintiff] can never balance or climb ladders, ropes, or scaffolds. She can occasionally reach overhead. The [plaintiff] is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights or around exposed flames, and unguarded large bodies of water, and she should avoid concentrated exposure to unguarded hazardous machinery. The [plaintiff] is further limited to simple, routine tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment. She is not capable of multitasking, or work requiring considerable self-direction. She can work at an average production pace, but not at a significantly above average or highly variable pace. She is further precluded from work involving direct public service, in person or over the phone, although the [plaintiff] can tolerate brief and superficial interaction with the public, which is incidental to her primary job duties. She is unable to work in crowded, hectic environments. The [plaintiff] can tolerate brief and superficial interaction with supervisors and coworkers, but is not to engage in tandem tasks.

(R. 22). The ALJ then summarized the plaintiff's allegations as to her limitations and stated that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." (R. 23).

The ALJ then discussed the medical evidence. (R. 23-26). The ALJ noted that plaintiff's "considerable daily activities include housework, yardwork, exercising, caring for two young children, and driving with her two young children in the car." (R. 26). The ALJ then went over the limitations he included in plaintiff's RFC based on the medical record. (R. 26-27). Next the ALJ addressed the medical opinion evidence. The ALJ noted that the state agency consultants, L. Hudspeth, Psy.D. and M. DiFonso, Psy.D., opined the plaintiff had overall mild limitations in

interacting with others and in concentrating, persisting, or maintaining pace, and she had no limitations in understanding, remembering, or applying information and in adapting or managing oneself. (R. 27). The ALJ found these opinions somewhat persuasive as they were consistent with some of the objective medical evidence and internally supported with findings from the record. (R. 28). But, the ALJ said there was evidence submitted after the opinions were issued that indicated the claimant had overall moderate limitations. (R. 28).The ALJ then found that the opinions from Dr. James Madison and Dr. Calixto Aquino, both state agency consultants, that the plaintiff had no severe physical impairment were not persuasive as they were not consistent with a majority of the objective medical evidence. The ALJ pointed out that additional evidence was submitted after the formation of these opinions that indicated the claimant was limited to less than the full range of the light exertional level. (R. 28). The ALJ next addressed the opinion from the consultative examiner, Michael Stone, Psy.D., that the plaintiff had poor ability to maintain the attention required to perform simple, repetitive tasks and sustain concentration, persistence, and pace and fair ability to relate to others, to understand, remember, and follow simple directions, and to adapt and withstand the stress and pressures associated with day-to-day work activity. The ALJ found that the opinion was not persuasive as it was not consistent with a majority of the objective medical evidence and was the product of one examination. (R. 28). Finally, the ALJ assessed the opinion from one of plaintiff's treating doctors, Dr. Chad Yucus, that the plaintiff was unable to sustain employment due to deceased attention, which limited her memory and ability to sustain tasks. The ALJ found this opinion was not persuasive as it was not consistent with a majority of the objective medical evidence. (R. 28). The ALJ added that opinions that a plaintiff is disabled, unable to work, can or cannot perform a past job, meets a listing are reserved to the Commissioner. (R. 29).

8

The ALJ then found, based on testimony from the vocational expert, that plaintiff could no longer perform her past relevant work as its demands exceeded her residual functional capacity. (R. 29). Based on the testimony of the vocational expert, the ALJ then found that plaintiff could perform other jobs that existed in significant numbers in the national economy: mail clerk (DOT #209.687-026; 47,000 jobs); cleaner/housekeeper (DOT #323.687-014; 133,000 jobs); or tagger (DOT #299.587-018; 30,000 jobs). (R. 30-31). Accordingly, the ALJ concluded that plaintiff was not disabled and was not disabled and not entitled to benefits under the Act. (R. 31).

## II.

If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017)

But, in the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the

path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)("The government seems to think that if it can find enough evidence in the record to establish that the administrative law judge might have reached the same result had she considered all the evidence and evaluated it as the government's brief does, it is a case of harmless error. But the fact that the administrative law judge, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless. Had she considered it carefully, she might well have reached a different conclusion."). But, at the same time, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).[2] "If a sketchy opinion assures

---

[2] Indeed, prior to *Sarchet's* "logical bridge" language, the court generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that he or she had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted" but only "a minimal level of articulation of the ALJ's assessment of the evidence ... in cases in which considerable evidence is presented to counter the agency's position." *Zblewski*, 732 F.2d at 79. In *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985), the court rejected a plaintiff's argument that an ALJ failed to adequately discuss his complaints of pain and was more explicit about how far ALJs had to go to explain their conclusions:

We do not have the fetish about findings that [the plaintiff] attributes to us. The court review judgments, not opinions. The statute requires us to review the quality of the evidence, which must be "substantial," not the quality of the ALJ's literary skills. The ALJs work under great

(continued...)

us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).

Finally and significantly, the Seventh Circuit has explained that "the "logical bridge" language in our case law is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021).

### III.

The plaintiff has three arguments for remand of the ALJ's decision in this case. First, the plaintiff contends that the ALJ failed to conduct a proper assessment of her mental functioning anywhere in the decision, beginning at Step Three. Next, the plaintiff complains that the ALJ relied upon cherry picking, mischaracterizations, and false equivalencies to undermine her subjective statements. And, finally, the plaintiff argues that the ALJ's RFC assessment is not based on the record evidence of physical and mental deficits. Any other argument plaintiff might have made is, of course,

---

[2](...continued)
burdens. Their supervisors urge them to work quickly. When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits. When they process cases quickly, they necessarily take less time on opinions. When a court remands a case with an order to write a better opinion, it clogs the queue in two ways—first because the new hearing on remand takes time, second because it sends the signal that ALJs should write more in each case (and thus hear fewer cases).

The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do.... This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

*Stephens*, 766 F.2d at 287 (citations omitted).

waived. *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

Along the way, the plaintiff engages in more than a bit of nit-picking and some cherry-picking of her own, in which the court, of course, cannot join her. *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010)(". . . we give the opinion a commonsensical reading rather that nitpicking at it."); *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). The plaintiff's presentation is somewhat rambling, and makes it difficult for a court to address all her criticisms without doing a little rambling of its own, unfortunately.

## A.

We begin with plaintiff's mental functioning, which is the focus of her brief. In assessing mental functioning, especially at Step Three, the ALJ must determine the level of plaintiff's limitations in four areas of functioning: 1) understanding, remembering, or applying information, 2) interacting with others, 3) concentrating, persisting, or maintaining pace, and 4) adapting or managing herself. C.F.R., Part 404, Subpart P, Appendix 1. The plaintiff complains that the ALJ found plaintiff no more than moderately limited in these areas, "[d]espite overwhelming evidence of marked difficulties in at least two of the four areas." [Dkt. #18, at 8]. But plaintiff never gets around to citing this "overwhelming evidence" – unless that is a deliberate overstatement – and it is, of course, her burden to prove her mental impairments prevent her from working by citing to medical evidence. *Kaplarevic v. Saul*, 3 F.4th 940, 943 (7th Cir. 2021); *Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021). Nevertheless, throughout her brief, the plaintiff almost exclusively sticks to criticizing the ALJ's decision, a. *Cohen v. Astrue*, 258 F. App'x 20, 26 (7th Cir. 2007); *Schmidt*, 496 F.3d at 842; and reiterating her subjective complaints.

As already noted, the ALJ's decision need not be supported by a preponderance of the evidence, only substantial evidence; "more than a mere scintilla. *Addis v. Dep't of Lab.*, 575 F.3d

12

688, 690 (7th Cir. 2009); *Cohen v. Astrue*, 258 F. App'x 20, 26 (7th Cir. 2007); *Schmidt*, 496 F.3d at 842; *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir.2007). "When reviewing for substantial evidence, we do not displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Schmidt*, 496 F.3d at 841–42. "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir.1996); *see also Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020). The tenor of plaintiff's brief, in essence, ignores this standard. Plaintiff did suffer a traumatic brain injury, but that was over a decade ago and doctors have indicated she has progressed well since then. How well is a matter for debate. But, in any event, there is no "overwhelming" evidence in this record; the evidence is – and this is giving the plaintiff the benefit of the doubt to a high degree – conflicting at best. And it was up to the ALJ to resolve conflicts and weight the evidence.

Plaintiff first faults the ALJ for pointing to the findings of two non-examining medical consultants that plaintiff's limitations were mild or non existent the four areas. Obviously, the ALJ is entitled to rely on these opinions in formulating his assessment of mental limitations and his RFC. While it's not entirely clear, it seems the plaintiff's issue is that the ALJ acknowledged that one of the consultants noted a drastic change in full scale IQ scores, from 106 in 2015 to 72 in 2018, but failed to comment on it other than to say both scores were assessed years after plaintiff's accident Plaintiff asserts that this means plaintiff has suffered lasting cognitive effects from her accident; but, the questions is, are they disabling? A borderline IQ score is not dispositive evidence of disability, *see, e.g., Burke v. Astrue*, 306 F. App'x 312, 315 (7th Cir. 2009); *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002); *Williams v. Apfel*, 179 F.3d 1066, 1073 (7th Cir. 1999), especially where, as here there is other medical evidence – which the ALJ mentioned (R. 21, 24-26) –that suggests otherwise.

The plaintiff "cherry-picks" this IQ score and ignores repeated treatment notes indicating cognition within normal limits, improved memory, and Adderral helping with focus. On April 13, 2018, a cognitive linguistic quick test was within normal limits, although there but there was a *mild* severity rating in memory and language. (R. 582). A standardized memory test placed plaintiff in the 19th percentile and as a result, the diagnosis was *mild* cognitive-communication deficits in the area of memory. (R. 582). Plaintiff received a score of twenty-five out of thirty on a Montreal Cognitive Assessment in December of 2016 (R. 633), which would be in the high range of a mild impairment. https://www.verywellhealth.com/alzheimers-and-montreal-cognitive -assessment-moca-98617#toc-scoring. And then, on September 3, 2019, she scored in the normal range, with a 29 out of 30. (R. 1122). As such, the medical evidence – perhaps not overwhelmingly, but certainly by a significant margin – points to a *mild* impairment.

The plaintiff then complains that the ALJ relied on "false equivalencies" to dismiss her claims of becoming overwhelmed in social situations, memory difficulties, and difficulty completing tasks, concentrating, understanding, and following instructions. The plaintiff takes the ALJ to task for noting that plaintiff attended to her own personal hygiene and cared for her children and pets, prepares simple meals, and does laundry and light cleaning, exercises, drives, shops, pays bills, watches television, uses a computer, talks on the phone, and writes letters. It is true that the Seventh Circuit has "repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). But that's not what the ALJ said.

ALJs are supposed to consider a plaintiff's daily activities. 20 C.F.R. § 416.929(c)(3)(I). *Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022); *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021) When they do, invariably, a plaintiff will argue that the ALJ wrongfully equated housework or

chores or hobbies with full-time work. But often, those arguments are grounded in a less-than-careful reading of the ALJ's decision. Here, the ALJ specifically said that "[w]hile such activities are not the equivalent of substantial gainful activity, they do support the ability to attend and concentrate sufficiently to perform simple, routine tasks." (R. 26). *See Deborah M.*, 994 F.3d at 791. All the ALJ did here was to look at plaintiff's activities – as well as other evidence like normal exam results and normal or mildly impaired cognitive functioning on tests – "to assess whether testimony about the effects of [her] impairments was credible or exaggerated." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016); *Prill*, 23 F.4th at 748.

We come then to the plaintiff's argument that the ALJ's obsevation that she had two children following the accident she is claiming ended her ability to work is offensive and lacked empathy and therefore demands reversal. We respectfully disagree. The plaintiff relies on *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005), in which the Seventh Circuit pointed out that the plaintiff must, of course, care for her children. In *Gentle*, however, the child the plaintiff was caring for was an infant, not a 2-year-old and a 4-year-old. And the court was of the opinion that caring for an infant did have "a degree of flexibility that work in the workplace does not [because y]ou can park the infant in a playpen for much of the day, and anyway it will sleep much of the day." 430 F.3d at 867–68. Many might quarrel with that assessment; but in any case, even accepting those views on childcare, the plaintiff's childcare demands here were far more involved and the ALJ was entitled to conclude they were far more involved than in *Gentle*. Moreover, even an instance of what the plaintiff deems to be in poor taste or constitutes misguided logic neither requires not insures reversal. It is well to recall that the law does not require perfection. In all contexts, litigants are entitled to a fair trial – not a perfect one. *Ohio Seely Mattress Co. v. Sealy, Inc.*, 585 F.2d 821, 843 (7th Cir. 1978).

15

From there, the plaintiff shifts focus and turns to the ALJ's assessment of the medical opinions in this case. First, the plaintiff complains that while the ALJ clearly believed that the non-examining psychological consultants had underestimated Plaintiff's each of Paragraph B limitations, he inexplicably asserted, later in the decision, that their opinions were "somewhat persuasive." It's unclear what plaintiff's beef is here. The state agency reviewing psychologists found the plaintiff less limited than the ALJ did. The ALJ found their opinions only "somewhat persuasive", explaining that there was evidence to indicate plaintiff was moderately limited. As such, the opinions were persuasive insofar that plaintiff did have a degree of limitation, but only somewhat insofar as the ALJ thought record supported a bit more of a degree of limitations than the state agency reviewers. It's an odd argument to make, chastising the ALJ for not finding a plaintiff even *more* capable of doing work.

Plaintiff then turns to the ALJ's discussion of the opinion from the consultative examiner. Plaintiff complains that the ALJ "outlined only the unremarkable portions of the evaluation, and neglected to mention diagnoses of four mental impairments and a dire assessment of Plaintiff's work-related functional capacity." [Dkt. # 18, at 9]. That's not true. What the ALJ did was discuss to examination findings in the medical evidence portion of his opinion (R.25), and the assessment of plaintiff's work capacity in the medical opinion section of his opinion. (R. 28) So, this argument is based on another less-than-careful reading of the ALJ's opinion; or the plaintiff believes that the Seventh Circuit's logical bridge requirement is some sort of draconian Chicago Manual of Style. Reviewing courts are not supposed to require needless formalities from ALJs. *See, e.g., Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)(". . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five."); *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015)("This discussion provides the necessary detail to review the ALJ's [RFC]

determination in a meaningful way. We do not discount it simply because it appears elsewhere in the decision."). *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir.1985) (refusing to require an ALJ to lay out his determinations and supporting reasoning in a "conclusion" section, as opposed to a "discussion" section, and calling any such requirement a "needless formality"). In any event, the ALJ's choice to address findings in one section and medical opinion in another makes sense, and in no way hinders meaningful review.

Plaintiff does make one potentially valid point, hidden among the more superficial criticisms, one that could have been missed due to all the nit-picking.[3] The ALJ said the consultative examiner found plaintiff had a fair ability to withstand the stress and pressures associated with day-to-day work activity when the psychologist actually rated that ability as poor. [Dkt. #18, at 10 ], (R. 28). But plaintiff makes nothing of it and leaves the argument undeveloped. *Vang v. Saul*, 805 F. App'x 398, 403 (7th Cir. 2020)("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019); *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013). In any event the ALJ found the opinion not persuasive as it was not consistent with the majority of the objective medical evidence. (R. 28). As has already been detailed, most of the exam findings and test results indicate normal abilities or mild limitations. That's a valid reason to reject the consultative examiner's opinion. *See, e.g., Prill*, 23 F.4th at 751

---

[3] The Seventh Circuit has frequently criticized this type of presentation, *see Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 513 (7th Cir. 2011); *United States v. Pearson*, 340 F.3d 459, 464 (7th Cir. 2003); *United States v. Evans*, 92 F.3d 540, 546 (7th Cir. 1996), calling it, variously, "the equivalent of a laser light show of claims [that] may be so distracting as to disturb our vision and confound our analysis." *United States v. Lathrop*, 634 F.3d 931, 936 (7th Cir. 2011) (collecting cases); a "scattergun approach [that] generally does not serve [clients] well," *Cole v. Comm'r*, 637 F.3d 767, 772 (7th Cir. 2011); or a "kitchen sink approach to briefing [that] cause[s] distraction and confusion, [and] also consumes space that should be devoted to developing the arguments with some promise." *Howard v. Gramley*, 225 F.3d 784, 791 (7th Cir. 2000). A brief containing a similar litany of insubstantial arguments once caused the Sixth Circuit to remark that "[w]hen a party comes to us with nine grounds for reversing the [lower court's decision], that usually means there are none." *Fifth Third Mortg. Co. v. Chi. Title Ins. Co.*, 692 F.3d 507, 509 (6th Cir. 2012).

(ALJ properly rejected opinion as inconsistent with objective medical evidence in the record); *Zoch*, 981 F.3d at 602 (ALJ properly rejected opinion that conflicted with the objective medical evidence). Moreover, the plaintiff fails to cite to *any* exam or test results that indicate poor abilities and, again, it is her burden to do so. *See, e.g., Fanta v. Saul*, 848 F. App'x 655, 659 (7th Cir. 2021); *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019).

Plaintiff then pivots to the ALJ's treatment of Dr. Yucus's opinion that she was "unable to sustain employment due to decreased attention, which limits her memory and ability to sustain tasks." The ALJ rejected this assessment for similar reasons; it was in conflict with the objective medical evidence which, as already discussed, suggests mild limitations. As such, it was entirely proper for the ALJ to reject it. *Zoch*, 981 F.3d at 602; *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) ("A treating physician's medical opinion is entitled to controlling weight if it is well supported by objective medical evidence." (emphasis added)). Notably, when the ALJ asked plaintiff's counsel to identify support for Dr. Yucus's opinion in the record – which, again, it is plaintiff's burden to do – counsel cited only an examination was referring to the claimant's subjective report and not tested memory loss. (R. 1094-96). That is another valid reason to reject a treating doctor's opinion. *Zoch*, 981 F.3d at 602; *Karr*, 989 F.3d at 512; *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019).

**B.**

At this point the plaintiff returns to the ALJ's assessment of her subjective allegations. The ALJ rejected the extent of plaintiff's alleged limitations based on the objective medical evidence, her daily activities, and some inconsistent statements. An ALJ's credibility finding must be upheld unless it is "patently wrong" and the ALJ failed to provide reasons for his assessment. *Deborah M.*, 994 F.3d at 789; *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017); *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). We have already discussed the objective evidence and the plaintiff's activities in

18

connection with some of plaintiff's other criticisms, and need not repeat that discussion. Clearly, the reasons the ALJ provided here are valid. 20 C.F.R. § 416.929(c); *Gladney v. Saul*, No. 857 Fed.Appx. 235, 239 (7th Cir. Apr. 23, 2021)(7th Cir. Apr. 23, 2021)("To determine the credibility of allegations of disabling symptoms, an ALJ may consider several factors, including objective medical evidence, daily activities, and any inconsistencies between the allegations and the record."); *Zoch*, 981 F.3d at 601(same). It is enough to say that plaintiff ignores the objective medical evidence in this section of her brief and focuses only on her allegations, as though they are somehow self-supporting. [Dkt. #18, at 11-13]. But subjective allegations of disabling symptoms alone cannot support a finding of disability. SSR 16-3P, 2017 WL 5180304, at *2. If it were otherwise, every plaintiff in every Social Security case would prevail. It is the plaintiff's burden to prove she is disabled by providing medical evidence beyond her claims. *See Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008)("The claimant bears the burden of producing medical evidence that supports her claims of disability. That means that the claimant bears the risk of uncertainty, ...."); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004)("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."); 20 C.F.R. § 404.1512(c)("You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled.").

## C.

Finally, plaintiff argues that the ALJ's RFC finding is "untethered to the record evidence of physical and mental deficits." [Dkt. #18, at 13]. Here, the plaintiff focuses on her physical impairments and does offer some citations to the evidence [Dkt. #18, at 14]:

> In May 2018, she was assessed with left knee pain, sacroiliac joint pain, bilateral low back pain, left and right clavicle pain, and left knee arthritis. Id. In October 2018, Plaintiff reported clavicle, spine, and knee pain. R. 659. In December 2018, Plaintiff's

left knee was tender to palpation with crepitation. R. 669.

\*\*\*

In June 2018, Plaintiff was enduring clavicle pain. R. 645. Examination revealed tenderness over the bilateral clavicles. Id. In July 2018, examination revealed decreased upper extremity strength and function. R. 609-610. In November 2019, Plaintiff was positive for malaise and fatigue, both of which would likely exacerbate her exertional limita

Obviously, the reports from plaintiff on May 2018, October 2018 (R. 659), and November 2010 (R. 1095) are all subjective reports and not medical evidence. That leaves knee crepitus and tenderness and clavicle tenderness. But as the record demonstrates repeatedly, in the main, plaintiff's physical examinations revealed no deficits related to these problems. (See, e.g., R. 1088 (motor exam normal; gait and coordination normal); R. 1236 (gait steady, strength 5/5 throughout); R. 1236 (gait normal); R. 635 (cranial nerves and motor exam normal, reflexes 2+, gait normal, R. 655 (full range of motion, sensations intact, and her upper and lower extremity strength normal), R. 659 (strength and sensation normal); R. 669 (strength and sensation normal), R. 1140 (normal strength and sensation, normal shoulder function aside from cross arm adduction bilaterally)). Not one of these findings detracts from the ALF's RFC determination.

### D.

In this district, as elsewhere, Social Security Disability cases are legion. The records in those cases are, almost invariably, over one thousand pages long – often over two thousand pages long. Among those reams of doctor notes, there is generally very little to say, one way or the other, whether the plaintiff is disabled or capable of working. The plaintiff – and counsel – are in a position to be far more familiar with the medical history than anyone else. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Thus, "[i]t is not unreasonable to require the [plaintiff], who is in a better position to provide information about h[er] own medical condition, to do so." *Id.* It is up to the plaintiff to support her

20

*claims* with *medical evidence. Gedatus*, 994 F.3d at 904; *Castile*, 617 F.3d at 927; *Eichstadt*, 534 F.3d at 668. As plaintiff and counsel know – or should know – best where that evidence might be in a massive record, the court is not obliged to sift through the medical evidence to find support for a plaintiff's subjective allegations. *Ehrhart v. Sec'y of Health & Human Servs*., 969 F.2d 534, 537 (7th Cir. 1992) (holding that "compelling the court to take up a burdensome and fruitless scavenger hunt ... is a drain on its time and Resources"); *see also Acera B. v. Saul*, 2021 WL 2222605, at \*5 n.5 (N.D. Ill. 2021); *Esther V. v. Saul*, 2021 WL 1121123, at \*10 n. 14 (N.D. Ill. 2021); *Dashrath P. v. Saul*, 2020 WL 6781796, at \*6, 7 (N.D. Ill. 2020); *David R. v. Saul*, 2020 WL 6565244, at \*8 (N.D. Ill. 2020). After all, "an advocate's job is to make it easy for the court to rule in his client's favor...." *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006). It is not to play archaeologist with the record. *See, e.g., DeSilva v. DiLeonardi,* 181 F.3d 865, 867 (7th Cir.1999). *See also Kreg Therapeutics, Inc. v. Vital Go, Inc.* 919 F.3d 405, 415 (7th Cir. 2019)

## CONCLUSION

For the foregoing reasons, the plaintiff's request that the case be reversed and remanded is denied and the government's request for affirmance [Dkt. #24] is granted and the ALJ's decision is affirmed.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

**DATE:** 5/20/22